(C. D. 1955)

ELECTROLUX CORPORATION *v.* UNITED STATES

United States Customs Court, Second Division

(Decided January 7, 1958)

*Lane, Young & Fox* (*William H. Fox* of counsel) for the plaintiff.
*George Cochran Doub*, Assistant Attorney General (*Alfred A. Taylor, Jr.*, trial attorney), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges

FORD, Judge: The suit listed above challenges the action of the collector of customs in classifying certain imported merchandise as "Steel H. H. utensils" and levying duty thereon at the rate of 20 per

centum ad valorem under paragraph 339 of the Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T. D. 52739. Plaintiff claims "That said merchandise is properly dutiable at 13¾% under Par. 353, Tariff Act of 1930, by virtue of T. D. 52739 amending T. D. 51802, as articles having as an essential feature an electrical element or device, wholly or in chief value of metal, and not specially provided for; or at 15% under said Par. 353, as modified."

This suit has been submitted for decision upon the following stipulation:

1. That the merchandise covered by the above protest is described on the invoice as "Floor Polishers," and consists of finished electrical floor polishers composed in chief value of base metal, not plated with gold, platinum, or silver.

2. That the said floor polishers were classified for duty by the Collector as steel household utensils and assessed at the rate of 20% under Paragraph 339, Tariff Act of 1930, as modified by the GATT (T. D. 51802).

3. That, as imported, the said floor polishers are articles which have as an essential feature an electrical element or device, namely, a 110 volt AC–DC electric motor, which is built into each polisher as an integral part thereof; and each of the said polishers also contains all of the electrical parts necessary to enable it to perform the function for which it is designed, solely by means of electrical power.

4. That the said floor polishers have been especially designed and constructed to be operated solely by electric motors; are incapable of operation without such motors; and to be operated they must be plugged into a source of electric current and the current switched on.

5. That said floor polishers do not contain any electrical heating elements as constituent parts thereof.

6. That said floor polishers are manufactured and used for the utilitarian purpose of spreading wax on and polishing the floor.

7. That said floor polishers are chiefly used in the household or home.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

The facts contained in the above stipulation make it clear that the floor polishers in question are articles having as an essential feature an electrical element or device, such as electric motors, and that they are chiefly used in the household or home. We are, therefore, required to determine whether said floor polishers are dutiable under paragraph 339 of the Tariff Act of 1930, as modified, *supra*, or under paragraph 353 of said act, as modified, *supra*. The two paragraphs, so far as pertinent, are as follows:

Paragraph 339 of the Tariff Act of 1930, as modified by T. D. 52739—

Table, household, kitchen, and hospital utensils, and hollow or
flat ware, not specially provided for, whether or not containing
electrical heating elements as constituent parts:

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

Other base metal, including steel (except electric flatirons
and household food·grinding or cutting utensils) _____ 20% ad val.

Paragraph 353 of the Tariff Act of 1930, as modified by T. D. 52739—

Articles having as an essential feature an electrical element or device, such as electric motors, fans, locomotives, portable tools, furnaces, heaters, ovens, ranges, washing machines, refrigerators, and signs, finished or unfinished, wholly or in chief value of metal, and not specially provided for:

\* \* \* \* \* \* \*

Other \* \* \*_____ 13¾% ad val.

In the case of *United States* v. *Minami & Co., Inc.*, 29 C. C. P. A. (Customs) 169, C. A. D. 188, the claim of the importer was under the following language of said paragraph 353:

articles having as an essential feature an electrical element or device, such as electric motors, fans, locomotives, portable tools, furnaces, heaters, ovens, ranges, washing machines, refrigerators, and signs;

all the foregoing, and parts thereof, finished or unfinished, wholly or in chief value of metal, and not specially provided for, 35 per centum ad valorem.

In disposing of the question presented in the above case, the Court of Customs and Patent Appeals said:

The foregoing claim was sustained by the trial court which said, *inter alia*:

We regard this illuminated wreath as an article "having as an essential feature an electrical element or device, such as electric \* \* \* signs." In fact, it is difficult to conceive how an article could more closely resemble an electric sign than does this wreath. Like a sign, this wreath is illuminated only at night, and ordinarily during certain hours. Accordingly, we do not agree with counsel for the defendant that these wreaths are not similar to any of the exemplers [*sic*] named in said paragraph 353.

\* \* \* \* \* \* \*

\* \* \* In view of the wide range of articles to which paragraph 353 may be applied and the difficulties sometimes attendant upon the efforts to determine whether it is applicable, we have deemed it not improper (particularly because of the trial court's references to them as recited) to refer to the above prior decisions of the Customs Court, not for the purpose of expressing any views thereon, but for the purpose of saying that our decision in the instant case should not be taken as either approving or disapproving them.

We think the ultimate issue in this case, as it has been presented before us, is confined within a narrow limit which may be stated in question form, viz: Are the articles involved articles which have as an essential feature an electric element such as signs? In our view, they are not such as any other articles specified *eo nomine* in paragraph 353, *supra*. If they be "such as signs" the judgment appealed from should be affirmed; if not, upon the record before us, the collector's classification should be sustained.

It should be here stated that the paragraph with which the above language of paragraph 353 was in competition in the *Minami* case was not paragraph 339, but paragraph 397, which was as follows:

PAR. 397. Articles or wares not specially provided for \* \* \*; if composed wholly or in chief value of iron, steel, lead, copper, brass, nickel, pewter, zinc,

aluminum, or other metal, but not plated with platinum, gold, or silver, or colored with gold lacquer, whether partly or wholly manufactured, 45 per centum ad valorem.

In the case of *M. Pressner & Co. v. United States*, 42 C. C. P. A. (Customs) 48, C. A. D. 568, the merchandise consisted of "a round paper box approximately 2¾ inches in diameter by 1 inch deep, with metal bands around the outer circumference of the box and the rim of the cover being substantially reinforced with metal bands, a small mirror on the inside of the cover and a pin cushion on the top of the cover. The box contains six small spools of cotton thread, one thimble and two hand needles."

The collector had classified the merchandise as articles or wares, not specially provided for, composed of metal, at 45 per centum ad valorem under paragraph 397 of the Tariff Act of 1930. The importer claimed said merchandise to be properly classifiable as household utensils under paragraph 339 of said act. In holding that the merchandise was properly dutiable under paragraph 343 as needlecases or needlebooks furnished with assortments of needles or combinations of needles and other articles, rather than as household utensils, the Court of Customs and Patent Appeals said:

The Government has conceded in its brief that the involved articles are household utensils and are chiefly used in the household.

The issue thus presented is whether the provision for "household utensils * * * not specially provided for," being a use provision, should prevail over the *eo nomine* provision for "needle cases or needle books furnished with assortments of needles or combinations of needles and other articles."

A "use" provision ordinarily prevails over an *eo nomine* designation. *United States v. Snow's United States Sample Express Co.*, 8 Ct. Cust. Appls. 351, T. D. 37611. The exception to this rule is the presence of a clear congressional intent to the contrary. *United States v. Pfaltz & Bauer (Inc.) et al.*, 16 Ct. Cust. Appls. 358, T. D. 43091; *United States v. John H. Faunce (Inc.) et al.*, 21 C. C. P. A. (Customs) 80, T. D. 46395; *Morilla Co., Inc. v. United States*, 27 Cust. Ct. 210, C. D. 1372. In the instant case the "use" provision in paragraph 339, *supra*, contains the qualifying phrase "not specially provided for," which indicates the Congress recognized the fact that some household utensils are specifically provided for elsewhere in the tariff act. It appears clear to us that Congress intended paragraph 339, *supra*, to cover only such household utensils as are "not specially provided for." * * *

. * * . * * * * *·

If Congress had intended paragraph 339, *supra*, to apply to all household utensils, it would not have provided therein only for "household utensils not specially provided for." We think the descriptive language of paragraph 343, *supra*, which definitely covers the involved merchandise, excludes it from the provision for household utensils, not specially provided for, in paragraph 339, *supra*, and that the merchandise is properly classifiable as "needle cases furnished with assortments of needles or combinations of needles and other articles" under paragraph 343, *supra*. In view of this holding, it is unnecessary to discuss other issues raised by this appeal.

Rules of construction are employed by the courts in an effort to arrive at the legislative intent, but all rules of construction must yield if the legislative intent is shown to be contrary to the apparent intent indicated by such rule. *United States* v. *Clay Adams Co., Inc.*, 20 C. C. P. A. (Customs) 285, T. D. 46078, and *United States* v. *Damrak Trading Co., Inc.*, 43 C. C. P. A. (Customs) 77, C. A. D. 611.

Counsel for the defendant asserts in his brief filed herein that there is no proof in the instant case that electric floor polishers are *ejusdem generis* with fans, washing machines, refrigerators, or any of the other articles named in said paragraph 353, and insists that the contention of plaintiff to the contrary is disposed of by the language of this court in the case of *Greatrex, Limited*, and *J. J. Gavin & Co., Inc.* v. *United States*, 33 Cust. Ct. 79, C. D. 1639, as follows:

The provision for household utensils in paragraph 339, *supra*, is controlled by the doctrine of chief use, and the decision of the collector of customs carries with it the presumption that he has found all pertinent facts necessary to establish the chief use of the commodity as a household utensil. If the article before us be, in fact, a household utensil, it is of no consequence that it may also be an article having certain electrical features, as described in said paragraph 353, for the simple reason that paragraph 339, *supra*, which enumerates household utensils among other articles provides that "the foregoing rates shall apply to the foregoing articles whether or not containing electrical heating elements as constituent parts thereof."

In the first place, we do not understand the plaintiff to argue that floor polishers are *ejusdem generis* with fans, washing machines, refrigerators, or any of the other articles named in said paragraph 353. As we understand plaintiff's contention, it is that the electric floor polishers in question have as an essential feature an electrical element or device, such as electric motors, and that said electrical motors in said floor polishers are *ejusdem generis* with the electrical motors in fans, washing machines, refrigerators, or any of the other articles named in said paragraph 353. It is our view that an electrical motor is an electrical motor within the provision therefor in said paragraph 353, whether it is an essential element of a fan, washing machine, refrigerator, or any other article named in said paragraph 353, as an exemplar of the articles intended by the Congress to be made dutiable under said paragraph 353.

It further appears that the statement by this court in the *Greatrex* case, *supra*, quoted above, was not necessary to a decision in that case, by reason of the following finding by the court in that case:

Viewed in the light of the foregoing authorities, we are of the opinion that the undisputed testimony of the five witnesses who testified in the consolidated record, augmented by the evidentiary value of the samples * * * compels the conclusion that the subject irons are not household utensils, as that term has been interpreted by our appellate court (*United States* v. *The Friedlaender Co.* and *Frank P. Dow Co., Inc.* v. *United States, supra*).

It should also be observed that the merchandise involved in the *Greatrex* case, *supra*, contained, as constituent parts thereof, electrical heating elements, while in the present case it has been agreed "That said floor polishers do not contain any electrical heating elements as constituent parts thereof," which distinguishes the facts in the *Greatrex* case, *supra*, from the facts in the present case.

In the *Minami* case, *supra*, the appellate court held the electric wreaths there involved "having as an essential feature an electrical element or device, such as electric * * * signs" to be specified *eo nomine* in paragraph 353. "In our view, they are not such as any other articles specified *eo nomine* in paragraph 353, *supra*." In the *Pressner* case, *supra*, the appellate court held the *eo nomine* provision in paragraph 343 to prevail over the use provision in paragraph 339.

Based upon the stipulated facts in this case, following the authorities cited and quoted, and for the reasons stated, we hold the floor polishers covered by this suit, which were assessed with duty at 20 per centum ad valorem under paragraph 339 of the Tariff Act of 1930, as modified, *supra*, to be properly dutiable at the rate of 13¾ per centum ad valorem under paragraph 353 of said act, as modified, *supra*, as alleged by the plaintiff.

To the extent indicated, the specified claim in this suit is sustained; in all other respects and as to all other merchandise, all the claims are overruled. Judgment will be rendered accordingly.